Grafton
No. 79-060

RONALD OLSZAK

v.

PEERLESS INSURANCE COMPANY

August 20, 1979

*Moulton, Smith & Samaha*, of Littleton (*Stephen U. Samaha* orally), for the plaintiff.

*Hinkley & Donovan*, of Lancaster (*Walter D. Hinkley* orally), for the defendant.

BOIS, J.    This is a petition for declaratory judgment to determine coverage under an insurance policy. RSA 491:22. After a hearing, *Johnson*, J., ruled in favor of the plaintiff and reserved and transferred the defendant's exceptions.

In the summer of 1976, the plaintiff started a construction business which primarily involved excavation work. Prior to beginning his business, the plaintiff owned several pieces of equipment which were covered by a basic liability policy obtained from his regular agent, Jerry Filteau d.b.a. Bristol Real Estate and Insurance Agency (Filteau). He testified that when he started his new venture, he contacted Filteau "[t]o get another type of coverage for myself being self employed, so I went down and I had him get a liability insurance." Peerless, at Filteau's request, issued a General Liability-Automobile Policy countersigned by Jerry Filteau as its authorized representative. In the fall of the same year, he entered into an "as required" snowplowing/sanding contract with International Packings Corporation. The evidence is clear, however, that he plowed and sanded areas specified by International only on a "when called" basis.

On February 6, 1977, the plaintiff sanded a certain designated area. He next returned to the premises on February 11, 1977, when he received a service call. Meanwhile on February 9, 1977, one Patricia A. Martin allegedly slipped and fell in the corporation parking lot.

In March 1978, suit was brought against the plaintiff by Mrs. Martin and her husband. The writ alleged that the plaintiff was under a contractual duty to keep the parking area clear of ice and snow and in a safe condition; that the plaintiff breached that duty, and that Mrs. Martin's injuries were proximately caused by the plaintiff's negligence.

The defendant, Peerless Insurance Company (Peerless), denied coverage, alleging (1) that snowplowing was not a risk covered by the policy; and (2) that the tort action arose out of a "completed operation" which is excluded from the coverage. At oral argument, Peerless withdrew its contention regarding snowplowing coverage, and the only question before us concerns the "completed operations" clause.

The policy in the present case is nearly identical to the one at issue in *Atwood v. Hartford Accident & Indemnity Co.*, 116 N.H. 636, 365 A.2d 744 (1976). As did the policy in *Atwood*, this policy consists of a cover jacket and several pages of definitions and conditions. A one-page endorsement attached to the policy is entitled "Manufacturer's and Contractor's Liability Insurance Coverage Part."

■   It provides on one side of the sheet the limits of liability for bodily injury and property damage liability. It also contains other information such as the description of hazards, premium bases, rates, and advance premium, and lists other endorsements that are attached to the policy. Plaintiff's operations are described merely as excavation, but Peerless has conceded, for purposes of this appeal, that snowplowing operations are also covered. We note that a reasonable person reading this page would expect that the policy would cover the claim being made against Olszak. *See, e.g., Atwood v. Hartford Accident & Indemnity Co.*, 116 N.H. 636, 365 A.2d 744 (1976).

The back of the page is the troublesome one. It is entitled "Coverage for premises and for the named insured's operations in progress." The remainder of the page is divided into two columns of print. The top of the left-hand column is headed:

> Coverage A—Bodily Injury Liability
> Coverage B—Property Damage Liability

Directly beneath is a sentence, over one hundred twenty-nine words in length which begins: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies . . . ." An extensive list of exclusions follows.

Peerless relies on exclusion (P), which reads as follows: "[This insurance does not apply] to bodily injury or property damage included within the completed operations hazard or the products hazard. . . ." The completed operations hazard is defined elsewhere. This exclusion clause is buried amidst sixteen others.

In *Atwood*, we held that "[n]either the quoted heading nor the quoted exclusion clause constitutes fair notice to the insured that the policy does not cover the risks defined on the completed operations hazard, which the front page would lead him to believe was covered." 116 N.H. at 639, 365 A.2d at 747. We reaffirm the vitality of the "reasonable expectations rule." *E.g., New Hampshire Insurance Co. v. Schofield*, 119 N.H. 692, 406 A.2d 715 (1979); *Hanover Insurance Co. v. Grondin*, 119 N.H. 394, 402 A.2d 174 (1979); *Storms v. United States Fidelity and Guaranty Co.*, 118 N.H. 427, 430, 388 A.2d 578, 579–80 (1978); *Magulas v. Travelers Insurance Co.*, 114 N.H. 704, 706, 327 A.2d 608, 609 (1974).

Peerless contends, nevertheless, that the present case is distinguishable from *Atwood*, because in *Atwood* there was no indication of dual agency, and because the insurer's agent in *Atwood* had not discussed with the insured the fact that the insured would not be covered once he left his job, and further because it had never occurred to the agent that the insured was not covered by the policy. In the present case, all parties agree that Filteau was acting as agent for both the plaintiff and the company. Filteau testified that the plaintiff was a sophisticated and discriminating buyer who understood the general insurance discussed with him. Although Filteau could not remember specifically discussing the completed operations exclusion, he was of the opinion that the plaintiff had been told and knew what was covered by the policy. The court found that "Agent Filteau . . . was of the opinion that plaintiff did not have completed operations coverage." The court further noted, however, that Filteau was not an impartial witness in view of his relationship with Peerless and in view of the fact that he was a defendant in a suit brought by the plaintiff. The gist of the plaintiff's testimony was that he relied upon his agent to obtain a policy containing the necessary coverage, and did not know what coverage he had because he never read the policy ultimately provided.

Peerless argues that the plaintiff never read his policy and further that the plaintiff makes no claim that he does not understand the policy's terms. Nevertheless, "[i]f a policy is so constructed that a reasonable man in the position of the insured would not attempt to

read it, the insured's reasonable expectations will not be delimited by the policy language, regardless of the clarity of one particular phrase, among the Augean stable of print." *Storms v. United States Fidelity & Guaranty Co.*, 118 N.H. 427, 430, 388 A.2d 578, 580 (1978).

Peerless also argues that the plaintiff relied on the expertise of *his* own agent who specifically and knowingly ordered the policy with no completed operations coverage. Peerless contends that it was blameless in issuing the exact coverage requested, and concludes that fault, if any, attaches to Filteau, who breached his duty to the insured.

The plaintiff's reasoning, on the other hand, is that he relied on his agent to obtain comprehensive liability coverage. He argues that knowledge of the plaintiff's needs and expectations should be imputed to Peerless because of the agent's dual role. He concludes that Peerless is therefore estopped from taking advantage of any exclusion as to a risk which it failed to provide for in the policy.

> [Estoppel arises] when "a party who knows or should know the truth is absolutely precluded . . . from denying, or asserting the contrary of, any material fact, which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such demand or contrary assertion were allowed."
>
> Estoppel rests largely on the facts and circumstances of the particular case.

*Monadnock School District v. Town of Fitzwilliam*, 105 N.H. 487, 488–89, 203 A.2d 46, 48 (1964) (citation omitted); *see Town of Nottingham v. Lee Homes, Inc.*, 118 N.H. 438, 442, 388 A.2d 940, 942 (1978).

■ The burden of proving estoppel is upon the party asserting it, and its existence is a question of fact to be resolved by the trier of fact, who may reject or accept such portion of the testimony as it chooses. *Town of Nottingham v. Lee Homes, Inc.*, 118 N.H. 438, 442–43, 388 A.2d 940, 943 (1978).

■ The court found that when the plaintiff purchased what he thought was a comprehensive liability policy, he reasonably assumed that all of his operations were covered even if completed. The evidence

supports the finding that the plaintiff justifiably relied not only on Filteau to procure for him all necessary liability insurance, but also on his own understanding of the insurance he was purchasing. *See Storms v. United States Fidelity & Guaranty Co.*, 118 N.H. 427, 430, 388 A.2d 578, 580 (1978). Filteau's knowledge of the plaintiff's expectation is imputable to Peerless. *See Boucouvalas v. John Hancock Mutual Insurance Co.*, 90 N.H. 175, 5 A.2d 721 (1939); *McCabe v. Hartford Accident & Indemnity Co.*, 90 N.H. 80, 4 A.2d 661 (1939). *See generally* 43 AM. JUR. 2d *Insurance* § 1063 (1969). The trial court, therefore, properly granted the plaintiff's request that "[t]he defendant . . . is legally bound by the representations, actions, and omissions of its authorized representative."

Based on all of the evidence, the trial court ruled "[t]hat the defendant is obliged to defend the Martin suit because the insurance policy failed to give fair notice to the plaintiff of what was covered by the policy and because the plaintiff justifiably relied on the authorized agent of the defendant to secure for him necessary insurance coverage." We sustain the court's ruling that the defendant company failed in its burden of proving noncoverage placed upon it under RSA 491:22(a) (Supp. 1977). We further hold that the court did not err by ruling that the plaintiff met his burden of proving estoppel. The resolution of questions of fact will be upheld if supported by the evidence. *Cote v. Eldeen*, 119 N.H. 491, 403 A.2d 419 (1979); *Heston v. Ousler*, 119 N.H. 58, 398 A.2d 536 (1979).

*Exceptions overruled.*

All concurred.