Hillsborough,
No. 5584.

LUMBERMENS MUTUAL CASUALTY COMPANY

*v.*

WARDNER R. PATTEE & a.

Argued May 2, 1967.
Decided October 31, 1967.

*Eaton, Eaton, Ross & Moody* ( *Mr. Robert I. Eaton* orally ), for the plaintiff.

*McLane, Carleton, Graf, Greene & Brown* ( *Mr. Charles A. De Grandpre* orally ), for the defendant D. H. McClarty Co., Inc.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* for defendants Paschall and Pattee filed no brief.

GRIMES, J. With the exception of an "Interpretive Endorsement" relating to the "Products-Completed Operations Hazard," the policy in question is essentially the same as the policy construed in *Peerless Insurance Co.* v. *Clough,* 105 N. H. 76. In that case, the court, with two Justices dissenting, construing the policy as a whole in the light of all the circumstances and interpreted as a reasonable man in the position of the insured would understand it ( which is the test we also apply ), held that the "needlessly misleading and obscure" ( *Ib.,* 79 ) provisions of the policy were not effective to exclude coverage for damage occurring after operations had been completed.

The main thrust of *Clough* on the point involved here is that since the insured was not involved with products, he would have no reason to think that anything involved in the description of that hazard applied in any way to the coverage which he had purchased, the definition of which stated he was protected with respect to "all operations."

The declaration sheet in the policy in question here provides that "insurance afforded is only with respect to such and so many of the . . . coverages and hazards . . . as are indicated by specific premium charge . . . ." Here, as in *Clough,* McClarty

paid a premium for only one hazard which in this policy was called "Manufacturers' and Contractors'." Also as in *Clough,* the other hazards listed included one entitled "Products - Completed Operations."

The "General Insuring Agreement" in the body of the policy provides that unless otherwise provided, all the terms of the policy apply to each supplement forming part of the policy. Attached to this policy is Supplement B which states the agreement of the company with respect to the "Manufacturers' and Contractors' Hazard."

With respect to property damage ( Coverage B ), it is stated in Supplement B that the company agrees "to pay . . . all sums which the insured shall become legally liable to pay as damages because of injury to or destruction of property . . . caused by accident and arising out of . . . *all operations.*" ( Emphasis supplied ). On the same side of this sheet ( Supplement B ), there is a description of other hazards listed on the declaration sheet, including "Products - Completed Operations." The definition of that hazard is divided into two paragraphs: (1) "Goods or products manufactured . . . . " and ( 2 ) "operations, if the accident occurs after such operations have been completed or abandoned . . . ." At the top of the reverse side of Supplement B appears in bold face print the word "Exclusions." Beneath in smaller print appear the words "This supplement does not apply:." This is followed by lettered sections running from (a) to (n) inclusive. In section (c) it is stated "to (1) the products - completed operations hazard, or (2) the independent contractors hazard."

The interpretive endorsement provides as follows: "It is understood and agreed that the word 'operations' as used in the Products Hazard or Products - Completed Operations Hazard includes any act or omission in connection with operations performed by or on behalf of the named insured on the premises or elsewhere, whether or not goods or products are involved in such operations."

As in *Clough,* the definition of the hazard purchased clearly and expressly insured against risks involving "all operations." It is not stated that he is covered for "all operations except completed operations" or "all operations except those included in the descriptions of hazards for which no premium is paid."

It is not made clear that "all operations" is not a broad coverage which includes completed operations even though a more

restricted coverage for completed operations is available. Lawyers skilled in the interpretation of insurance policies might conclude that "completed operations" were excluded from coverage of this policy, but we do not believe that the reasonable person in the shoes of the insured would do so. It is not clearly indicated to an ordinary person that the coverages provided for the various hazards are mutually exclusive. The interpretive endorsement in no way supplies these deficiencies, but merely indicates that the products-completed operations hazard includes operations in which products are not involved.

As in *Clough*, this insured was not engaged in the manufacture and sale of products as such, and no products were involved in the work done at the Pattee home. The "Completed Operations" hazard is tied to the "Products" hazard exactly as it was in *Clough*, where the court held (*Ib.*, 82) that a person in the position of the insured would not "naturally think that his coverage . . . was restricted or affected in any manner by anything contained in a definition boldly headed 'Products-Completed Operations,' a subject which did not concern him." We adhere to *Clough* on this point and find that holding to be equally applicable to this case.

Since the "Interpretive Endorsement" is also boldly headed "Products-Completed Operations Hazard," the insured would have no more reason to think that it applied to him than he would the other provisions relating to the same hazard.

In summary, we conclude that the plaintiff is bound to defend the actions against the defendant D. H. McClarty Co., Inc. and, within the limits of the policy, to pay any judgments entered therein.

*Judgment for defendant McClarty Co.;
remanded.*

GRIFFITH, J., took no part in the consideration of this case; the others concurred.