591 A.2d 682

INDUSTRIAL DEVELOPMENT ASSOCIATES A/K/A INDUSTRIAL
DEVELOPMENT ASSOCIATION, A NEW JERSEY LIMITED
PARTNERSHIP, PLAINTIFF–APPELLANT, v. F.T.P., INC., A
CORPORATION OF THE STATE OF NEW JERSEY, DEFEN-
DANT–RESPONDENT, AND COMMERCIAL UNION SURPLUS
LINES INSURANCE COMPANY, A CORPORATION OF THE
STATE OF DELAWARE; EXECUTIVE EXCESS LTD.; ANTO-
NIO SUAREZ D/B/A I.C.P.; ASSOCIATED FINANCIAL SER-
VICES, A NEW JERSEY CORPORATION; P.P.G., INDUSTRIES,
INC., A CORPORATION OF THE STATE OF PENNSYLVANIA
AND PUGLIESE SWIMMING POOLS CORPORATION, A NEW
JERSEY CORPORATION, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued October 23, 1990—Decided May 31, 1991.

Before Judges MICHELS, GRUCCIO and D'ANNUNZIO.

*Glenn A. Bergenfield* argued the cause for appellant (*Michael F. Chazkel,* attorney and on the brief).

*Robert H. Tell* argued the cause for respondent, attorney for respondent (*Lynch, Martin & Philibosian,* attorneys).

The opinion of the court was delivered by

GRUCCIO, J.A.D.

Following our remand pursuant to our decision in *Industrial Development Assoc. v. Commercial Union,* 222 *N.J.Super.* 281, 536 *A.*2d 787 (App.Div.1988), plaintiff Industrial Development Association (I.D.A.) appeals from the decision of the trial court granting defendant F.T.P., Inc.'s (F.T.P.) motion for judgment notwithstanding the verdict (j.n.o.v.). For the purposes of this opinion, we adopt the facts as presented in our earlier

opinion with the exception that defendant Antonio Suarez remains a defendant. *See id.* at 284–87, 536 *A.*2d 787. We here address the narrow issue of whether I.D.A. was required to present expert testimony to establish the standard by which F.T.P. broker Thomas Guthrie's conduct should be judged. As to the issue of the necessity for expert testimony, we reverse. Accordingly, the verdict of the jury is reinstated.

On remand, the jury found that "defendant F.T.P. failed to exercise on plaintiff's behalf the requisite degree of skill, knowledge and care in obtaining the insurance policy in question." However, the trial judge granted defendant's motion for j.n.o.v. holding that expert testimony was necessary to establish the duty of F.T.P.'s broker Guthrie. We disagree and find the trial judge's holding in direct conflict with the well-established duty of an insurance broker as laid out in New Jersey case law. As early as 1900, New Jersey has held that

> [a] broker is a specialist employed as a middleman to negotiate between the parties to a sale or other business contract, and they must exercise customary skill in the preparation of such documents as are required to effectuate the business which they have in hand.

*Milliken v. Woodward,* 64 *N.J.L.* 444, 448, 45 *A.* 796 (1900); *see Barton v. Marlow,* 47 *N.J.Super.* 255, 259, 135 *A.*2d 670 (App. Div.1957); *Marano v. Sabbio,* 26 *N.J.Super.* 201, 205–06, 97 *A.*2d 732 (App.Div.1953). As an insurance broker invites his clients to rely upon his expertise in procuring insurance that best suits their particular requirements,

> [o]ne who holds himself out to the public as an insurance broker is required to have the degree of skill and knowledge requisite to the calling. When engaged by a member of the public to obtain insurance, the law holds him to the exercise of good faith and reasonable skill, care and diligence in the execution of the commission. He is expected to possess reasonable knowledge of the types of policies, their different terms, and the coverage available in the area in which his principal seeks to be protected. If he neglects to procure the insurance or if the policy is void or materially deficient or does not provide the coverage he undertook to supply, because of his failure to exercise the requisite skill or diligence, he becomes liable to his principal for the loss sustained thereby.

*Rider v. Lynch,* 42 *N.J.* 465, 476–77, 201 *A.*2d 561 (1964); *Bates v. Gambino,* 72 *N.J.* 219, 224–25, 370 *A.*2d 10 (1977).

■ In *Cox v. Santoro,* 98 *N.J.Super.* 360, 237 *A.*2d 491 (App.Div.1967), we found that three circumstances existed in which a *prima facia* case of negligence could be established against a broker.

> An insurance broker may be held liable for his failure to exercise the requisite skill or diligence if he fails to issue the insurance policy he has promised to procure, *Marano v. Sabbio,* 26 *N.J.Super.* 201 [97 *A.*2d 732] (App.Div.1953); if he assures the insured that he is covered whereas he is not, *Barton v. Marlow,* 47 *N.J.Super.* 255 [135 *A.*2d 670] (App.Div.1957), or if he procures a policy which is materially deficient, *Rider v. Lynch, supra,* [42 *N.J.* at 476, 201 *A.*2d 561].

*Cox, supra,* 98 *N.J.Super.* at 365, 237 *A.*2d 491. However, a broker's liability is not necessarily limited to these three circumstances. *Bates, supra,* 72 *N.J.* at 225 n. 2, 370 *A.*2d 10.

■ Where a broker fails to meet the established minimum standards, expert testimony is not necessary to establish the culpability of the broker. *DiMarino v. Wishkin,* 195 *N.J.Super.* 390, 394, 479 *A.*2d 444 (App.Div.1984). In *Bates,* the Supreme Court found that "plaintiffs were not obligated to present evidence of what a similarly situated competent broker in the community would have done under the circumstances. Where conduct falls below a certain standard, establishing the standard of competence generally expected of like practitioners becomes irrelevant." *Bates, supra,* 72 *N.J.* at 225, 370 *A.*2d 10.

At trial, the jury found that F.T.P. had been contributorily negligent and allocated to F.T.P. 15% of fault. Presumably, this was based on Guthrie's failure to take any action upon his alleged discovery of I.D.A.'s inoperative sprinkler system. Both the trial court and counsel for F.T.P. seem to base their assertions that expert testimony is needed on the lack of clarity as to exactly what action Guthrie should have taken. This lack of clarity led the trial court to the conclusion that expert testimony is required to set out for the jury what Guthrie should have done. The trial court factually distinguished *Bates* from the case at hand. While we agree that factual differences exist, we, nevertheless, find that the principles applied in *Bates*

and early cases dealing with broker liability should be applied to this case.

The record here contains sufficient credible evidence from which a jury could conclude that Guthrie's conduct fell sufficiently below the established minimum standards for a broker such that the jury could find his conduct negligent without expert testimony as to the standard of competence expected of similarly situated brokers. *See Bates, supra,* 72 *N.J.* at 225, 370 *A.*2d 10. Guthrie was a broker whose duties included making an assessment of the risks against which I.D.A. was insuring. There is testimony in the record which indicates that during the course of his inspection of plaintiff's facility, he was made aware that the sprinkler system was inoperative. Despite this knowledge of the existence of the automatic sprinkler clause of the protective safeguard endorsement of the insurance policy, Guthrie took *no steps whatsoever* to either follow-up on the status of the system or to notify any party of the inoperative status. These facts could permit a jury to find that Guthrie failed to exercise "reasonable skill, care and diligence" in the execution of his commission. *See Rider, supra,* 42 *N.J.* at 476–77, 201 *A.*2d 561; *Bates, supra,* 72 *N.J.* at 224–25, 370 *A.*2d 10.

Our decision should not be read to suggest that the same standards of liability which apply to a common market underwriter necessarily apply to an excess insurance underwriter. Rather, we limit our application of the *Bates* standards to the excess underwriter market where instances of the conduct of the particular broker clearly violates conduct which could be expected from a reasonable broker regardless of the market in which he dealt.

We find the other issues raised by plaintiff concerning contributory negligence, the damages verdict and joint tort feasance to be without merit. *R.* 2:11–3(e)(1)(E). We reverse

because of the erroneous grant of j.n.o.v. and remand for reinstatement of the jury's verdict.

Reversed and remanded.

MICHELS, P.J.A.D., dissenting.

I respectfully disagree with the majority that would reverse the judgment in favor of defendant F.T.P., Inc. (F.T.P.) notwithstanding the verdict, and then, reinstate the jury verdict.

My colleagues believe that Thomas Guthrie's (Guthrie) conduct as a surplus lines insurance agent "fell sufficiently below the established minimum standards" of "fail[ing] to exercise 'reasonable skill, care and diligence' in the execution of his commission" as to forego the necessity of expert testimony to establish the competence generally expected of like insurance agents. In my view, however, the evidence does not create such a clear cut breach of any applicable standard to find that plaintiff proved a prima facie case of negligence on the part of Guthrie.

We must not lose sight of the fact that Guthrie was not a traditional insurance agent attempting to place traditional insurance coverage, but rather, was a surplus lines insurance agent placing surplus lines insurance. Surplus lines insurance is coverage that insurance companies authorized or admitted to do business in this State have refused to cover by virtue of the nature of the risk. The duties of surplus lines agents are regulated by statute and differ from those of a traditional insurance agent. Expert testimony is necessary to establish the applicable standard of care and professionalism to which similarly situated surplus lines insurance agents must adhere and whether any deviation from that standard occurred. Without such testimony, a jury can not properly or reasonably determine whether a surplus lines insurance agent is negligent.

Consequently, to have made out a prima facie case against F.T.P., plaintiff was required to present expert testimony to establish the appropriate standard of care to be exercised by

similarly situated surplus lines insurance agents and whether Guthrie deviated from that standard. Having failed to present such expert testimony and from my review of the record, I am convinced that the trial court properly granted judgment notwithstanding the verdict in favor of F.T.P. Therefore, I would affirm the judgment under review substantially for the reasons expressed by Judge Yanoff in his oral opinion of March 3, 1989.